Filed 12/17/15  Lavi v. Wilshire-Ardmore, L.P. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PARVIZ LAVI, | B257297 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC361357) |
| v. | |
| WILSHIRE-ARDMORE, L.P., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

Krane & Smith, Marc Smith and Daniel L. Reback for Plaintiff and Appellant.

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, Joel E. Boxer and Sharon Ben-Shahar for Defendants and Respondents Wilshire-Ardmore, L.P, Mayer Separzadeh, and Action Investment Group, Inc.

Epport, Richman & Robbins and Steven C. Huskey for Defendant and Respondent Eilel Namvar.

## INTRODUCTION

Plaintiff and appellant Parviz Lavi (Lavi) sued defendants and respondents Mayer Separzadeh, Action Investment Group, Inc. (AIG), and Wilshire-Ardmore L.P. (collectively, the Wilshire-Ardmore defendants) and Eilel Namvar based on claims defendants defrauded Lavi out of his interest in a partnership agreement and/or his interest in a building on Wilshire Boulevard. After Lavi was given six opportunities to state causes of action, the trial court sustained defendants' demurrers to his fifth amended complaint without leave to amend, on the ground, among others, he failed to join indispensable parties. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Factual background.[1]

This action arises out of transactions concerning 3540 Wilshire Boulevard (the Property).[2] Lavi, Separzadeh, and Ezri Namvar orally agreed that Namco Financial, an entity Ezri "dominated, operated, influenced and controlled," would enter into an option and purchase agreement to buy the Property. Namco Financial would assign its rights in the option agreement to the Wilshire-Ardmore Limited Partnership, formed by Lavi and Separzadeh on May 10, 1995. The partnership's purpose was to own and develop the Property. Before the close of escrow, Namco Financial assigned the option agreement to the partnership.

To acquire a 50 percent interest in the Property, Lavi, "individually, and through his related persons and/or entities," invested $950,000 in the partnership. Lavi, through Continental Group, a company Lavi "controlled," had a 50 percent interest in the partnership. AIG was a 1 percent general partner, and Separzadeh and other investors were 49 percent limited partners.

---

[1] We state the factual background from the operative pleading, the fifth amended complaint.

[2] The action also concerned a property in Hollywood, but it is not a subject of the appeal. We therefore do not summarize the lengthy allegations about that property.

Separzadeh, AIG, and Ezri Namvar, however, on May 18, 1995, "concocted a fraudulent version" of the partnership agreement reducing Continental Group's capital contribution from $1,150,000 to $575,000 and reducing its interest from 50 to 25 percent. The 25 percent interest was misappropriated and transferred to defendant Eilel Namvar (Ezri Namvar's father). Eilel Namvar held the 25 percent interest as "collateral," pending resolution of a dispute between Lavi and Ezri Namvar. In January 1996, Eilel Namvar transferred the 25 percent interest in the partnership to Namco Capital, an alter ego of Ezri Namvar. At no time did defendants "foreclose on the collateral of [Lavi's] 25% interest" in the partnership.

The Property was sold in 2007, but Lavi did not receive the 25 percent distribution he was owed under the partnership agreement.

Lavi generally alleged that Jamshid Lavi and Turbo Dynamics Corporation (plaintiffs in the original complaint), and Continental Group assigned and transferred any claims they had against defendants to Lavi.

## II.      Procedural history.

### A.      *The original complaint, filed November 3, 2006.*

The original complaint was brought by Lavi, Jamshid Lavi, and Turbo Dynamics against Ezri Namvar, Namco Capital Group, Namco Financial, and Equimax Mortgage and Loan, nonparties to this appeal. Plaintiffs alleged that, in 1994, defendants "offered Plaintiffs a ½ interest in the Wilshire Building" in exchange for $1 million, which plaintiffs deposited. This agreement was oral. Defendants failed to honor their agreement to pay plaintiffs for their interest in the Property.[3]

### B.      *The first amended complaint, filed April 25, 2007.*

Lavi, now the sole plaintiff, filed a first amended complaint, which now named, among others, the Wilshire-Ardmore defendants and Eilel Namvar, and which alleged 10

---

[3]      Plaintiffs alleged five causes of action: breach of contract; breach of implied in fact contract; fraud; unjust enrichment; and resulting trust.

3

causes of action relating to the Property.[4]  Unlike his allegations in the original complaint, Lavi alleged that his interests derived from the written agreements discussed above; namely, the Wilshire-Ardmore Limited Partnership agreement, in which Lavi, "through the Continental Group, held a 50% interest."  After the partnership bought the Property, defendants "reduced [Lavi's] interest in [the partnership] from 50% to 25% and transferred such interest to themselves and/or their agents, . . . and/or entities," including Eilel Namvar.  The first amended complaint now alleged that, in "March 2006, Continental Group, Edmond Lavi and Edward Lavi assigned all of the claims as alleged in this FAC regarding the [Property] to" Lavi.[5]

On July 25, 2007, the trial court (Hon. Edward Ferns) sustained, with leave to amend, the Wilshire-Ardmore defendants' and Eilel Namvar's demurrers, which argued, among other things, that the first amended complaint was fatally inconsistent with the original complaint and that Lavi failed to allege an interest in the Property.

C.    *The second amended complaint, filed August 14, 2007.*

Lavi's second amended complaint explained why he was now the sole plaintiff: "[s]ubsequent to the filing of the original Complaint, original plaintiffs Jamshid Lavi and Continental Group assigned and transferred any claims they have" against defendants to Lavi.[6]  The pleading continued to allege that Continental Group and Edmond and Edward Lavi assigned all claims to Lavi and that Lavi, "through a company owned and controlled by him, Continental Group," entered into the partnership agreement.

The second amended complaint also attempted to clarify what happened to Lavi's 50 percent interest in the partnership:  "In or about July, 2007, Defendants Ezri Namvar,

---

[4]    The causes of action were:  conspiracy to defraud; negligent misrepresentation; breach of fiduciary duty; conversion; unjust enrichment; money had and received; imposition of constructive trust; accounting; declaratory relief; and unfair competition.

[5]    Edmond and Edward Lavi apparently are Lavi's sons.

[6]    The reference to Continental Group was a typographical error and should have been to Turbo Dynamics.

4

Eilel Namvar . . . Namco Capital, [and the Wilshire-Ardmore defendants] breached the [partnership agreement] by . . . concocting a fraudulent version of the [partnership agreement] denouncing [Lavi's] entitlement to a 50% interest in the . . . partnership, transferring one-half of his 50% interest in the . . . Partnership to Defendant Eilel Namvar . . . ."[7]

The parties stipulated that Lavi could file a third amended complaint.

D.     *The third amended complaint, filed November 2, 2007.*

The third amended complaint was substantively similar to the second with respect to the partnership agreement and Lavi's 50 percent interest in it.  As to the fraudulent version of the partnership agreement, Lavi alleged that Ezri Namvar, Eilel Namvar, Namco Capital, and the Wilshire-Ardmore defendants transferred 25 percent of Lavi's interest in the partnership to "*Ezri Namvar* without [Lavi's] consent and for no consideration (which Defendant Eilel Namvar has subsequently transferred to other related persons or entities), . . ."[8]  (Italics added.)  New exhibits were attached to the pleading that allegedly supported Lavi's allegations he had a 50 percent interest in the partnership and Property.

On April 28, 2008, the trial court (Judge Ferns) sustained with leave to amend the demurrers of the Wilshire-Ardmore defendants and Eilel Namvar.[9]  The court found, "Plaintiffs Jamshid Lavi and Turbo Dynamics Corporations are no longer parties to this

---

**7**     Attached to the pleading, for the first time, were the partnership agreement and the "fraudulent" partnership agreement.  The partnership agreement, however, which Lavi alleged showed that he, through the Continental Group, had a 50 percent interest in the partnership, instead stated that Continental Group had a 25 percent interest in the partnership.  But Lavi then filed an errata submitting the "correct" version of the agreement, consistent with his allegation that Continental Group had a 50 percent interest in the partnership.  The "fraudulent" partnership agreement showed that Continental Group and Eilel Namvar each had a 25 percent interest in the partnership.

**8**     The second amended complaint alleged the transfer was to *Eilel Namvar*.

**9**     The reporter's transcript is not part of the record on appeal.

action, not because they have decided to forego pursuing whatever rights they may have had under contract, but because they are no longer alleged to have been parties to the contract." Lavi had "not alleged facts which establish that he has an individual interest in this action. His purported interest comes from interests in businesses in which he belonged, and transactions concerning companies which are not parties to this action." "Not one paragraph in the entire pleading concerning plaintiff's interest in the properties makes sense." "Plaintiff cannot avoid naming the necessary parties and pleading necessary facts to establish standing and cognizable charging allegations by arguing that the transactions between the parties are complex. Plaintiff must set forth the basis of his dispute in a coherent manner, and cannot avoid the applicable laws by arguing that plaintiff has alleged twenty-three causes of action and forty-seven pages. The complexity does not alter the law on standing, or the requirement that the operative complaint must give the defendants notice of the basis of the suit. The fact that there is a large number of persons and entities involved in the over two decades of complex business transactions does not dispense with the need to abide by pleading requirements, rather it increases the need for coherency."

E.   *The fourth amended complaint, filed May 16, 2008.*

This version of the pleading alleged that Jamshid Lavi *and Turbo Dynamics* assigned and transferred their claims to Lavi. Although the second and third amended complaints had alleged that Continental Group and Edmond and Edward Lavi assigned all claims to Lavi, the fourth amended complaint omitted this allegation as to Edmond and Edward Lavi.

Similar to prior pleadings, Lavi alleged that he and Separzadeh agreed to buy the Property and that they and/or their assignees would own interests in a limited partnership to be formed on a pro rata percentage, based on their initial investments. This pleading alleged that 25 percent of Lavi's 50 percent interest in the partnership was transferred to Eilel (not Ezri) Namvar. But the pleading also alleged that the 25 percent interest was "(later transferred to Defendants Namco Capital and Namco Financial) . . . ."

6

The Wilshire-Ardmore defendants and Eilel Namvar again separately demurred. Although the trial court (Judge Ferns) was inclined to sustain the demurrers without leave to amend, the court gave leave to amend, so that Lavi could conduct discovery.[10] The court again found that the fourth amended complaint, like the prior pleadings, "makes little sense, and those allegations which are clear, are those which show that plaintiff does not have standing to assert a cause of action based upon any interest in the two properties . . . ."[11]

F.      *The fifth amended complaint, filed December 15, 2008.*

Lavi's fifth amended complaint contained 21 causes of action, the last 10 of which concerned the Property.[12] Demurrers were filed. Before they could be heard, the case was stayed, because involuntary petitions for bankruptcy were filed against Ezri Namvar and Namco Capital Group. Apparently to avoid a stay of causes of action concerning the Property, Lavi filed dismissals that left extant only the 12th and 14th causes of action as to Eilel Namvar and the 12th, 13th, 15th, 16th, and the 18th through 20th causes of action as to the Wilshire-Ardmore defendants. Lavi also dismissed without prejudice Ezri

---

[10]      The discovery did not concern the Property.

[11]      The hearing was unreported.

[12]      Those causes of action were:  the 12th cause of action for conspiracy to defraud (Wilshire-Ardmore defendants, Eilel Namvar, Ezri Namvar, Namco Financial, and Namco Capital); 13th cause of action for breach of the partnership agreement (AIG and Separzadeh); 14th cause of action breach of fiduciary duty (Eilel Namvar, Ezri Namvar, Namco Financial, and Namco Capital); 15th cause of action for breach of fiduciary duty (Wilshire-Ardmore defendants); 16th cause of action for conversion (Wilshire-Ardmore defendants, Eilel Namvar, Ezri Namvar, Namco Financial, and Namco Capital); 17th cause of action unjust enrichment (Wilshire-Ardmore defendants, Eilel Namvar, Ezri Namvar, Namco Financial, and Namco Capital); 18th cause of action for money had and received (Wilshire-Ardmore defendants, Eilel Namvar, Ezri Namvar, Namco Financial, and Namco Capital); 19th cause of action for account stated (Wilshire-Ardmore defendants, Eilel Namvar, Ezri Namvar, Namco Financial, and Namco Capital); 20th cause of action for an accounting (Wilshire-Ardmore defendants, Eilel Namvar, Ezri Namvar, Namco Financial, and Namco Capital); and 21st cause of action for unfair competition (all defendants).

Namvar, Namco Financial, and Namco Capital Group from the 12th through 21st causes of action, namely, all causes of action concerning the Property.

Defendants renewed their demurrers. On February 19, 2014, the trial court (Hon. Steven Kleifield) sustained them without leave to amend on the grounds that Lavi had not alleged standing to sue and failed to include indispensable parties.[13] "The demurrers to the original complaint and to the amended complaints were heard by Judge Ferns, who reluctantly granted leave to amend to file a fifth cause of action [*sic*]. The primary deficiency found by Judge Ferns was lack of standing on the part of the plaintiff. Plaintiff was not a signatory to the agreement which is the subject of this action. Plaintiff argues in his papers that he is the assignee of the cause of action held by Continental Group, the signatory to the agreement. However, an assignment of the cause of action was pled in earlier versions of the complaint, as to whom demurrers were sustained. At oral argument, plaintiff's counsel argued that Continental Group was a 'dba', something that was never pled and was raised for the first time. The deposition transcripts attached to the fifth amended complaint do not cure the deficiencies with respect to standing." As to indispensable parties, "Ezri Namvar and Namco Capital, the defendants who actually received the proceeds of the sale, were found to be indispensable parties by Judge Ferns and Judge See. The action was stayed during the pendency of their bankruptcy for that very reason. Plaintiff has dismissed them from the twelfth through twenty first causes of action; their dismissal makes them no less indispensable. . . . The case is essentially a dispute between Namco Capital and [Lavi] over ownership of the 25% of the partnership." The court also found, as to Eilel Namvar, that fraud and breach of fiduciary duty were inadequately pleaded.

## DISCUSSION

The trial court sustained the demurrer on two grounds, standing and failure to name indispensable parties. We conclude that the judgment must be affirmed based on

---

[13]    The hearing was unreported.

8

the second ground; namely, Lavi failed to name indispensable parties Ezri Namvar and Namco Capital and/or Namco Financial.

When reviewing a judgment entered following the sustaining of a demurrer without leave to amend, our de novo review requires us to assume the truth of the factual allegations of the complaint, giving the complaint a reasonable interpretation and reading the complaint as a whole and its parts in their context. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) And when a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Ibid.*; see also Code Civ. Proc., § 452.[14])

A party may be indispensable to an action if "(1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party." (§ 389, subd. (a); see also *Save Our Bay, Inc. v. San Diego Unified Port Dist.* (1996) 42 Cal.App.4th 686, 692 [" 'Where the plaintiff seeks some type of affirmative relief which, if granted, would injure or affect the interest of a third person not joined, that third person is an indispensable party' "].)[15]

---

[14] All undesignated statutory references are to the Code of Civil Procedure.

[15] "If a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be

Ezri Namvar and his alleged alter egos, Namco Capital and/or Namco Financial, were indispensable parties. The gist of the pleadings was Lavi had a 50 percent interest in the Wilshire-Ardmore partnership and/or the Property. According to the first amended complaint Lavi's 50 percent partnership interest was "reduced" to 25 percent and transferred to defendants, including Eilel Namvar. But, according to the fourth amended complaint, Lavi's interest was transferred to "*Ezri Namvar* without [Lavi's] consent and for no consideration (which Defendant Eilel Namvar has subsequently transferred to other related persons or entities)." (Italics added.) The fifth amended complaint then alleged that Eilel Namvar held the 25 percent interest as "collateral," pending resolution of a dispute between Lavi and *Ezri Namvar*. Eilel Namvar transferred the 25 percent interest in the partnership to Namco Capital, an alter ego of Ezri Namvar.

Although these allegations are somewhat opaque, Lavi's multiple pleadings make clear that Ezri Namvar and his alter egos played an integral part in the transactions underlying the lawsuit. Indeed, Lavi confirms this in his briefs on appeal. Lavi states, for example, "Nothing in the pleadings indicates that this is a dispute over who owns the Continental Second 25%. . . . [T]*he Continental Second 25% was collateral for the repayment of an alleged debt by Continental Group to Namco Financial.* Eilel Namvar and/or Namco Capital could have become owners of the Continental Second 25%, but they would have had to first foreclose on their security interest to do so." (Italics added.) "Thus*, as trustees, Ezri Namvar and Namco Capital cannot claim an ownership interest in the Continental Second 25% but, rather, a security interest which Plaintiff allege*[*d*] *(and Respondents do not dispute) has __never__ been foreclosed on.*" (Italics added.) If part of Lavi's partnership interest was either transferred to Ezri Namvar/Namco Capital or if Ezri Namvar/Namco Capital have a security interest in Lavi's partnership interest, then they are indispensable parties. Determining Lavi's interests in the partnership would thus necessarily involve resolving the nonparties' security interest. Lavi clearly agreed,

adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder." (§ 389, subd. (b).)

10

because he initially named Ezri Namvar, Namco Capital, and Namco Financial as parties on all causes of action concerning the Property (except for the 13th and 15th).  But he dismissed them, apparently in an attempt to avoid the bankruptcy stay.[16]

Nor can we find that the trial court abused its discretion by denying leave to amend and entering a dismissal with prejudice.  Lavi has made no showing he can amend his pleading to name the indispensable parties.  (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318 [plaintiff has the burden of proving a reasonable possibility he can amend]; *William S. Hart Union High School Dist. v. Regional Planning Com.* (1991) 226 Cal.App.3d 1612, 1621 [same]; see *Morrical v. Rogers* (2013) 220 Cal.App.4th 438, 461 [" 'Whether a party is necessary and/or indispensable is a matter of trial court discretion in which the court weighs "factors of practical realities and other considerations." [Citations.]' "].)  He made no representation, in either his briefs on appeal or at oral argument, how he can amend his pleadings to address these issues.  Instead, Lavi has had six opportunities over the course of almost eight years to state causes of action.  And although Lavi originally named Ezri Namvar, Namco Capital, and Namco Financial as parties to causes of action concerning the Property, he dismissed them in May 2013.

Also, given the lengthy history of this action and the varying, numerous, and complex allegations in the six pleadings, the absence of a record of, for example, the hearing on the demurrers to the fifth amended complaint, precludes an adequate review. (See generally, Cal. Rules of Court, rule 8.120(b); see also rules 8.134 & 8.137.)  Lavi, as the appellant, had a duty to provide an adequate record to demonstrate error.  (*Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1; *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 712, overruled on another ground by *Wilson v. Garcia* (1985) 471 U.S. 261.)  To the extent the record here precludes an adequate review, we make all reasonable inferences in favor of the judgment.  (*Rossiter*, at p. 712.)

---

[16]    As to the 13th and 15th causes of action, Lavi incorporated by reference his allegations about Ezri Namvar and his alter egos into those causes of action.

11

## DISPOSITION

The judgment is affirmed.  Defendants and respondents are to recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

EDMON, P. J.

LAVIN, J.

12